Our next case for argument this morning is Cook County Republican Party against Sapone. Good morning. Mr. Abbasi. Good morning, may it please the court. I'm Pericles Abbasi, attorney for the appellants Frances Sapone and Sammy Tenuta. On March 15, 2016, the Republican primary voters in the 29th Ward elected Frances Sapone, the Republican Ward Committeeman, and the Republican voters in the 36th Ward elected Sammy Tenuta, the Republican Ward Committeeman. Mr. Abbasi, I'm worried about whether there's federal jurisdiction in this case, and perhaps we can discuss that. By all means. It looks to me that your argument, indeed the gist of your brief, is simply that our clients had a right under state law to be seated on the Central Committee. But of course, there's no diversity of citizenship in this case, so why is an argument under state law properly before us? I disagree with your conception. Part of, sort of the entry point, before we get to the federal issues, is that they had a right to, under state law, they were in DC. That's your argument, that they had a right under state law. And there is an anticipatory defense that that right under state law is inconsistent with the party's rights under the First Amendment. That's correct. But it's a pretty well-entrenched principle of federal jurisdiction that anticipating a federal defense does not create federal jurisdiction. We were not the plaintiffs in this case. I understand that. The party was trying to anticipate the federal defense. But, to repeat, it's a pretty well-established principle of federal jurisdiction that anticipating a federal defense does not allow federal litigation. So, this- It doesn't seem to me to matter who anticipates the federal defense. Don't we have a problem? I'm trying to think where we'd be back then if that's- I mean, that's something for them to address as well. No. Right. Federal jurisdiction is important for everyone, every judge, every litigant, all the time. You can't just say, oh, I want to ignore it, it's their problem. No, it's your problem. It's our problem. The only ground of jurisdiction I can think of is the supplemental jurisdiction under 28 U.S.C. 1367, which the parties have not talked about, because there was a federal claim by the party against Cook County voting officials. Yes. But the supplemental jurisdiction works only for things that are part of the same case or controversy. And it's very difficult for me to see why whether Mr. Leaf was on the ballot is the same case or controversy as whether Mr. Sapone is on the Central Committee. And without there being the same case or controversy, the supplemental jurisdiction doesn't work. So- Do you have any thoughts about this? I do. So in determining whether the injunction was granted, the district court had to make the decision that whether or not Sapone and Tenuta were committeemen. That came to the crux of whether the injunction would be granted or not. Because the basis, the argument in front of the Board of Elections when Sapone filed her elected committeeman, she had the right to notice. She didn't have the right to necessarily be part of the committee that voted for Mr. Leaf, but she had the right to notice under a Graham v. State Officers Electoral Board, a- I'm not following you. Why does that bear on the question whether there is just one single case or controversy before the court? So- Obviously you haven't thought about jurisdiction. Equally obviously the Republican Party hasn't thought about jurisdiction. Jurisdictional statements in this brief, in the two parties' briefs, do not make a serious effort to explain why there's federal jurisdiction in this case. We will give the parties 14 days to file supplemental statements about jurisdiction. But Mr. Bolton and I will be wanting to discuss this with you, too. Okay, should I proceed with- Yes, please. This will be your only chance. Thank you, sir. Thank you, Your Honor. To the constitutional issues and the First Amendment rights of the appellees, they have made the argument that if Zipone and Tanuta are elected committeemen without their permission because of their bylaw that someone who had voted in the Democratic primary in the past eight years cannot be a committeeman, they argue that that'll be an infringement upon their right of association for two reasons. The first being that it will force them to let people that they don't want get involved in the internal decisions of their party. The second one is it'll force people they don't want being involved in candidate selection of their party. And then they cite you versus the San Francisco Democrat Committee for the first point. To the second point, they cite a California Democratic Party versus Jones. However, neither of those situations is applicable here. The case that controls is Mark Iorio versus Doris Cheney, a Washington State decision. The reason for that is that under Illinois law, there is no requirement that committeemen be involved in the leadership of the Republican Party of Cook County or Chicago. There are functions for committeemen. So is the vision you have that there is sort of an inside committeeman and an outside committeeman? No. That is, there's an official committeeman who's elected under state law, has this handful of official duties, and then the party has somebody else who actually handles the internal party work? They can decide whoever they want to run the internal party. It can be, it could be committeemen, which is the decision they made, and that was the decision that was made to Mark Iorio, but no state law requires that. Or it could be volunteers. It could be dues-paying members. It's completely up to them who manages their party. The fact that they chose to have committeemen manage their party, despite no state statute requiring them to, makes this the exact same situation as the Mark Iorio versus Cheney decision. If we have jurisdiction to deal with the merits, I frankly don't see a big problem with the bylaw in general. But I do have a problem with the timing, six days before the primary, which might suggest that your clients would be entitled to some temporary relief. But is that something you care about, or are you worried, are you looking to more permanently set aside this kind of loyalty requirement? No, I'm, it's, so that is part of it. We brought that up as well, for especially citing a state case, right before the, you know, well, early voting had already started. Both candidates had already voted for themselves. I'll say that a committeeman issue, too, is that these committeemen, the state of Illinois gave them public functions as well, and that is the appointment of election judges, the nomination of election judges to be appointed, and should there be a vacancy in the General Assembly, they're involved in filling that vacancy. Those aren't party functions, those are public functions. In fact, as to the appointment of election judges, that falls under the elections clause of the U.S. Constitution. The appointment of election judges, however, the bipartisan, genuine bipartisan participation is in essence at the heart of that system, right? That's true, and that's why the Republican primary voters elected both of these candidates. Well, maybe, but that's okay. In terms of imposing qualifications, it seems to me that both the state and the party have got some pretty good reasons to want to make sure that the folks in those roles are loyal to the particular party involved. I just don't know if they can do it after voting has started. And I agree with that as well, Your Honor. And I mean, if temporary relief is a solution, I mean, that's something we can discuss, but to the point of the state's role, this is the state's decision, and the state decided that it would make this bipartisan by having the Republican voters vote for, in a primary, vote for the Republican committeemen, and the Democratic voters vote for the Democratic committeemen. I'll note the Berson versus Freeman decision, which went into a long exposition of why the polling place is where the political parties, their power is at their nadir at the low points. They had, excuse me, it's a point where within 100 feet of a polling place, free speech is, or political speech is criminal. The polling place is not the political party's domain, this is the state's domain, and it's up to the state to decide who they want, how they want to do this, to handle the situation under the elections clause. The system that they created was that the Republican voters of a ward will elect a person who will then nominate and appoint the election judges in that ward for that party. And it is balanced, and even though in Chicago where Democratic voters... You're not challenging all loyalty requirements for party officials, are you? To the effect that they don't, and I, you know, in my brief I mentioned this, to the effect that they don't, if they believe that their disloyalty is, and I'm not saying supporter to it are not, you know, loyal Republicans, but if they don't want either person to be involved in actual party decisions, internal party decisions, they don't have to get them take away the right of the state of Illinois to determine how it runs its elections and who it has running its elections and guaranteeing the integrity of the elections, which the U decision said is a compelling state interest. The decision of how the state of Illinois creates this bipartisan balance is a decision for the state, for the General Assembly. It's not a decision for the Republican Party, it's not a decision for the court even, it's a decision under the Constitution, Article 1, Section 4, that goes to the state, and this is the system that they created, and it's... It doesn't impede in any way on the internal operations of the Republican Party because Illinois law doesn't, unlike the law in U v. San Francisco Democratic Committee, does not force parties to be governed by these committeemen that are involved in the election process. Illinois does, as I understand it, impose residency requirements for these elections, right? For the committeemen or to vote in. Committeemen. They just have to be a registered voter at the time they turn in the... Anywhere in the state or... No, within the ward. Within the ward, okay. Yes. Okay. And then they gather enough signatures to get on the ballot. They can't be felons, as I understand it. Yes, they cannot be felons. Okay. I will reserve the rest of my time for a moment. Mm-hmm. Thank you. Certainly, Mr. Rivasi. Mr. Bolton. Good morning, Your Honors. May it please the court, Your Honor, I imagine we're going to start with jurisdiction, and to address that, Your Honor, which was not raised below, Your Honor is quite correct. Jurisdiction must be considered. It must be considered before filing. It must be considered by the district judge. It must be considered in the briefs on appeal. I am never responsive to the argument, oh, jurisdiction wasn't raised below. It just means the lawyers haven't done their jobs right. Well, Your Honor, the jurisdiction, I can give Your Honor, the reason that there is no supplemental jurisdiction is the sequence of events that led up to the filing of the lawsuit. Ms. Cipone made her objection. That's true. It was pending before the Chicago Board of Election Commissioners. That's true. What happened in the interim was a hearing officer report came down, which found, affirmatively found, that Cipone was a lawful committeeman, and therefore recommended to that panel, the board, that the candidacy of Leif be stricken. So the Republican Party was in a position where we had a proceeding where we had no procedural rights. Look, I understand that there is federal jurisdiction over the party's suit against the Board of Election Commissioners. That's based on the party's own First Amendment rights. Whether the fact that the board defaulted shows there was a real case or controversy is no longer important. The question for supplemental jurisdiction is whether the existence of these two people on the board is the same case or controversy as the party's claim against the election officials. Seems to me there might be two different controversies here. That's what I'm trying to figure out. Because under 1367, which of course neither side's brief even mentions, that's the key question. Your Honor, the implementation, the interaction of the two claims, Your Honor, stems from the fact... It is not the case that every claim that interacts with every other claim is the very same case or controversy. I agree, Your Honor. The reason why it presents jurisdiction in this case, Your Honor, is because there was a TRO now in effect, based upon due process, which was stopping that proceeding in front of the Board of Elections. That is essentially suspended by the TRO with the hearing officer report stating that Cipone was a commitment and that leave should be taken off the ballot. That was now essentially frozen by the TRO. That issue of Cipone and Tanuta, were they a commitment or were they not, which was plainly before the Board and was still unresolved before the Board, only because of the TRO. That issue was still there before the Board and the resolution of that issue was a requirement that our First Amendment rights, which we could not defend in that action, had to be adjudicated so that our candidate for Congress could stay on the ballot. That issue was still there, Your Honor. That's why I believe that the issue was properly before Judge Schader to resolve because the entire matter before the Board of Elections, which could potentially have very adverse consequences to the Republican Party's effort and could potentially open the door to what Judge Schader called donkeys in elephant's clothing, was still pending before that Board. That issue had to be resolved, Your Honor, and that's why we went to Judge Schader to ask him to resolve it so that the entire matter would be resolved. So it seemed to us at the time that they... I can see the outline of your position. As I said, we will give the parties 14 days to write a supplemental memoranda addressing what seems to be the key question, which is whether the party's claim against the Board and the party's claim against the two elected officials are the same case or controversy. Very well, Your Honor. I'll continue on with the rest of the argument. Your Honors, two very important points that I'd like to raise about almost the predicates for what was going on here is Illinois is an open primary state. Anybody can walk into a polling place, request a Republican ballot of whatever political bent they are, and vote in the Republican primary. We have no... As a Republican Party, we have no control over that. As a matter of fact, Your Honor, we have very little control over who is even going to be on that primary ballot because Illinois, anyone who files with appropriate signatures, be it Democrats or anyone else, can get on the ballot. So we face a situation where we cannot control who gets on the ballot of the code, nor can we control who votes. A second point that I would point out to the Court in advance is that the... I think the Court's aware of the registration and voting totals in this city. In Ms. Sapone's ward, there were over 17,000 Democratic votes in the last primary. There are 800 and change for the Republicans. Our point about the worry, the concern of the Republican Party, I hope, is now evident that it is not that hard, given the signature requirements, given the voting differences, for a Democrat to get his signatures, get on the ballot, and get elected without one Republican signature or one Republican vote. Richard Daly did that a long time ago. Excuse me? Richard Daly did that a long time ago. Yes, Your Honor. Liked it as a Republican. Your Honor, the First Amendment right, I won't go over. I believe the Court's quite familiar with that. We believe that there is a severe burden because of the way that this statute invades our internal processes of stating how we even elect the members of the Central Committee, which is an effect, the part. I understand your argument on that point in general, Mr. Bolton, I think, but I'm troubled by taking this action six days before voting closes, after it has already begun. Your Honor, what happened is the time sequence, because the papers are only filed approximately December 1st. I don't have the exact date for Your Honor, but we can get it. What happens is, Your Honor, Mr. Cleveland, the Chairman, reviews as he does, starts reviewing all these people to see who they are, because as I said, we don't even know most of the time. So he was reviewing the petitions. That's when this pattern began to be evident to him that there was a wave of candidates with no Republican voting record that suddenly were on the ballot, which he had not seen before. So then he faces a problem, Your Honor, which is that he has to go to the Central Committee of the Cook County Republican Party to do something about that. There are 80 members of that committee. He has to first find out the problem. Then he has to come up with a solution to the problem, but then he has to get some sort of a meeting with enough members there so that there's a sufficient quorum under the bylaws of, I believe, 65 percent, might be 60, in order to get that bylaw passed to provide the protection. So what in effect was really going on, Your Honor, is they were going as fast as they can. It was not a case of trying to sabotage any candidates. It was simply trying to get what they thought was vital protection in place before that primary, so that at least when the votes went down on primary day, they would have some sort of protection of their party in place. Your Honor, I would also note, I'd like to go, Your Honor, since my time is running, I'd like to go to a couple of points that I think were rather key in what the appellate was saying. One is this idea that the Republicans are public bodies that allows a compelling state interest. Your Honors, it would be a very disturbing thought with this section, with this section 26-5 and the appointment of the legislators. It's a very disturbing result if a state can unilaterally pass a mandate upon a Republican party that it will now appoint legislators and then bootstrap that statute into a compelling state interest that now allows that same legislature to dictate to this party how it will elect its people and what kind of people will be there and be on their committee to run their party. I would offer, Your Honor, that the nomination process, recognized by the Jones Court as one of the most crucial parts for exclusion of people who are not of your political tenants, it only gets more accentuated when we're talking about an actual legislator that's now going to vote on the matters before the legislator, that it is crucial that that person be of the Republican tenants. So, therefore, the exclusion as a practice in this case is vital so that the Republican tenants and their ability to put in office a person that is of their ilk is now preserved. You'd agree that the state can require residency, can require that these be selected by elections? Yes, Judge. We are not, actually, Judge. Can impose the no felon requirement? Judge, we're actually not asking that Section 7-8 be declared unconstitutional at all. All we are asking is that we be allowed to put on a further qualification based upon our First Amendment rights to say who will be on the central committee of that party. It seems to us that it is the right of the party to say that, not the right of the state legislature. Do you think the state could impose a gender quota on the committee? Your Honor, gender quotas have been, were up for consideration in the U.K.'s from California that cited in the briefs. They put in a provision that stated that there had to be a female state chairman and a male state chairman at the same time. It would strike us, Your Honor, that when we get into the internal workings of a political party, essentially the state's ability to dictate almost anything as to who is going to be in that role ends. The problem is just the public role the party has as well. Well, Your Honor, I would also point out that in the earlier cases, as we said in our briefs, that prior to 1980, political parties were generally assumed to be state action because of the primary. It was kind of viewed as a semifinal, if you will. But starting in 1980, the Supreme Court began to shift very strongly towards the First Amendment rights of the parties to start to state what will be within their internal management. So that would be my response to your question is that the court now is taking the position that the party's ability to state what it's going to have as its structure under the First Amendment now is paramount in the Supreme Court. So you think we should treat Marcioro as obsolete at this point? I would offer, Judge, that I believe that Marcioro is no longer good precedent given Jones, given La Follette, given you, given Tashigen, which I hope I'm pronouncing right. Well, you distinguished it. It didn't overrule it. It didn't overrule it. The Supreme Court has said we're not supposed to treat their cases as overruled until the justices say they're overruled. I agree, Your Honor, but also look at what Marci- Why don't you just rely on the distinction in footnote 22 of you rather than asking us to go above our grade level? Very well, Your Honor. I will not. I'd also, Your Honor, I'd also point out that, if I may, Your Honor, I'd also like to point out a case that we only touched upon in our brief, but we did cite, which is the Rodriguez case in Puerto Rico, as far as our ability to decide what that procedure will be to nominate a candidate or nominate a legislator. In that case from Puerto Rico, it was very similar superficially in that a legislator had died. The Puerto Rican statute stated that the party would be the one making the decision as to appointing the replacement, and the Puerto Rican party held what was virtually a closed primary in order to decide who that person would be. People who were not in that closed primary of the other party sued, saying, because of our freedom, our right of association, you have to let us into that election. What the Supreme Court said was very interesting. They said, once the state gives over to that party the power to make that decision, how the party makes that decision is up to the party. I reiterate how much the current Supreme Court precedent draws a line, that once you get into that process, then it is up to the state. It's going back to the 26-5, is that we believe that the party's position is well grounded as to the fact that that does not make us a public body. I'd also point out, Judge, that there's no compelling state interest here. The compelling state interest under you has to be related to the actual conduct of elections. The claimed interest here is certainly not, because the election clause in the Constitution is limited to the mechanics of the election. And we feel that the compelling state interest being asserted by Ms. Cipone, on behalf of the state of Illinois, must be relating directly to the conduct of the election, not going further to say, well, because we're in charge of elections, we get to dictate this, or we get to dictate that. We're lying back on simply because there is an election. We don't believe in that case that there's any possibility of that being proper. Your Honors, unless there are more questions from the bench, I'll conclude my argument at this time. Thank you very much, Mr. Bolton. Anything further, Mr. Abbasi? Yes, Your Honor. Oh, Justice, Judge Bauer, you mentioned that this goes back to Mayor Daley. If this is, if they're worried about donkeys in elephant's clothing, this isn't a recent phenomenon. They didn't have to make this rule six days before an election. They could have made it 10 years, 20 years, 40 years ago, for whatever reason they did it right before an election. And again, I've never said, or we've never said that the Republicans are a public body. No one's ever said, and Illinois law doesn't say, that these committeemen are the people who run the Republican Party, that these people are the individuals who run the campaigns in the ward. Maybe that's by tradition. Maybe that's by their bylaws. But Mark Yarrow still holds, as you distinguished, Mark Yarrow still holds, and that if they decide to give a committee or committeemen power over their party, that's their decision. They don't have to make that decision. And whether you call it internal electional committeemen or whether you just call it a committee, is there any response to what you said in footnote 22 about Mark Yarrow and about the limits of that holding? Right. You said it didn't mention it, so it didn't get to the point of nominating. Of who the committeemen were. That was the ground on which Mark Yarrow was distinguished. You're essentially asking us to ignore the way in which you distinguish Mark Yarrow. Why should we do that? I don't agree that that's what the distinction was. Well, do you have any other response to footnote 22? I believe that the distinction there was that they said that in you, the Washington Democratic Party, didn't make an issue of the fact that this committee was involved in filling vacancies and nomination. They said that the issue was that they gave this committee the power to run the party. And they couldn't. They said that the issue of the composition was that they couldn't decide who the composition was and that this committee ran the party. But the court in Mark Yarrow said, and you did not distinguish that, and you did not overrule that, was that, well, you gave this committee the power. In Mark Yarrow, the court said, you can have a separate committee to run. You can't run the actual politics of it. And that's the case here. I'll also bring the issue of donkeys in elephant's clothing and whether Sapone or Tanuta are interlopers. Tanuta, his father was a Republican committeeman for 16 years in the 29th Ward. And he's voting both Democratic and Republican primaries. But he's a strong Trump supporter, and he's a true Republican. Sapone helped Louis Tanuta, Sammy Tanuta's father, as a Republican committeeman as he's been old. Thank you, counsel. The case will be taken under advisement.